# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| METROPOLITAN PROPERTY AND CASUALTY INSURANCE COMPANY,<br><br>Plaintiff,<br><br>vs.<br><br>AGENCY ONE INSURANCE, INC. and PAMELA A. SIROKY,<br><br>Defendants. | No. C12-4050-LTS<br><br>***MEMORANDUM OPINION AND ORDER ON PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT*** |

*TABLE OF CONTENTS*

*I.    INTRODUCTION..................................................................................2*

*II.   PROCEDURAL HISTORY ....................................................................2*

*III.  RELEVANT FACTS ..............................................................................3*

*IV.   ANALYSIS ............................................................................................6*
   *A.   Summary Judgment Standards....................................................6*
   *B.   Discussion..................................................................................8*
      *1.   Negligence ........................................................................8*
      *2.   Negligent Supervision ..................................................... 12*
      *3.   Breach of Fiduciary Duty and Breach of Contract ................ 14*

*V.    CONCLUSION................................................................................... 15*

## I.    INTRODUCTION

This case is before me on plaintiff's motion (Doc. No. 29) for partial summary judgment. Defendants have filed a resistance (Doc. No. 35). Plaintiff did not file a reply.[1] I conducted a hearing on March 19, 2014. Plaintiff was represented by attorney John Gray and defendants were represented by attorney Douglas Phillips. The motion is fully submitted.

## II.    PROCEDURAL HISTORY

Plaintiff Metropolitan Property and Casualty Insurance Company (Met P&C) commenced this diversity action on May 17, 2012. It alleges that it appointed defendants Pamela Siroky (Siroky) and Agency One Insurance, Inc. (Agency One) to accept applications for insurance and to bind Met P&C to insurance contracts in accordance with Met P&C's underwriting guidelines. On or about December 7, 2010, Agency One applied for coverage with Met P&C on behalf of Patricia Potter for a property described as a one-story, 1500 square foot, single-family residential dwelling built in 1958. This description complied with Met P&C's underwriting guidelines and Met P&C issued a policy to Potter. Potter's property was later destroyed by fire. When she submitted her claim, Met P&C learned for the first time that the property was actually a two-story, 4320 square foot commercial, six-unit, fully-occupied apartment building constructed in 1925. This is a commercial risk that Met P&C does not cover.

Met P&C alleges the Potter property was erroneously insured and Met P&C was erroneously bound due to Agency One's misrepresentation of the property. It asserts claims for breach of contract, negligence, negligent supervision, breach of fiduciary duty

---

[1] Although a reply brief is optional, the moving party is required to respond to the nonmoving party's statement of facts. *See* Local Rule 56(d). Failure to do so means all of the nonmoving party's facts are deemed admitted. *Id*. At the hearing, plaintiff requested the opportunity to respond to defendants' statement of additional facts. Defendants did not object and plaintiff filed its response on March 21, 2014. Doc. No. 38.

and vicarious liability. Agency One and Siroky filed an answer (Doc. No. 8) on June 28, 2012, in which they deny liability and raise various affirmative defenses. Doc. No. 8 at 3.

On August 29, 2013, with the parties' consent, United States District Judge Mark W. Bennett transferred the case to me. *See* Doc. No. 20. Trial is scheduled to begin May 27, 2014.

### III. RELEVANT FACTS

Except as otherwise noted, the following facts are undisputed for purposes of Met P&C's motion for partial summary judgment:

*The Parties.* Met P&C is a personal lines insurance company incorporated in, and with its principal place of business in, Rhode Island. Agency One is a Nebraska insurance agency corporation which, at all relevant times, did business in Sioux City, Iowa. Siroky is a Nebraska resident. She is the owner and President of Agency One and an agent of Agency One.

*The Agreement Between Agency One and Met P&C.* On March 3, 2008, Met P&C and Agency One entered into an Independent Agency Agreement. Under this agreement, Agency One could accept applications for insurance and bind Met P&C to insurance policies. The agreement required Agency One to only bind Met P&C to policies that met its underwriting guidelines. Met P&C paid commissions to Agency One for the policies it secured.

*The Agreement Between Agency One and Douglas Inlay.* Douglas Inlay (Inlay) worked as an insurance agent in Sioux City. Siroky was introduced to Inlay in spring 2010 through a group of professionals. After their introduction, they continued to meet to discuss establishing a professional relationship. Siroky spoke with Kelly Hanson, a Regional Sales Manager of Met P&C, about doing business with Inlay and Hanson thought it was a good idea based on the type of business Inlay had previously done and a

review of his five-year production history and loss ratio. Hanson interviewed Inlay at his Sioux City office and thought he was a "reputable individual."

Before Inlay signed his Independent Agent Agreement with Agency One, Hanson gave Inlay permission to use the access code of another Agency One employee to start entering policies into Met P&C's online system. Inlay produced several policies with Met P&C and Hanson described his production as "truly amazing." Indeed, Hanson won a trip to Las Vegas because of all the new business Inlay was generating.

On May 1, 2010, Agency One and Inlay entered into an Independent Agent Agreement. This agreement allowed Inlay to bind insurance carriers (such as Met P&C) to policies through Agency One. Agency One and Inlay would then split the commissions Inlay generated. Inlay's office was in Sioux City and Agency One's was in David City, Nebraska. Inlay employed Candice Hunter and Joe Sauce at his Sioux City office.

In August 2010, Met P&C conducted a background check of Inlay and notified Siroky of a "questionable item." Siroky forwarded the information to Inlay, who stated he would handle it directly with Met P&C. Inlay provided an explanation to Met P&C and it did not request further information.

***Inlay's Employment with Agency One.*** Met P&C issued Inlay his own access code in October 2010. However, he continued to use other Agency One employees' codes to bind Met P&C policies and his own code was later deactivated.

Around November 1, 2010, Siroky learned from Inlay that his insurance license had either been suspended or revoked. Inlay explained he was the victim of misconduct by other agents in his prior position and had hired an attorney to appeal. Siroky and Inlay met with Siroky's attorney to discuss what Inlay could do as a producer without a license. They were advised that Inlay could become an employee of Agency One and continue to service existing customers and policies, but could not sell, solicit or otherwise participate in any part of the sale of an insurance policy, including submitting an application.

4

On December 1, 2010, Agency One hired Inlay as an employee and paid him a base salary to oversee the Sioux City office. According to his employment agreement, he was not allowed to participate in any part of the sales process of an insurance policy. Siroky informed Hanson of the new arrangement. Met P&C policies continued to be placed through the Sioux City office. Siroky presumed this was done through Sauce, who held an insurance license in December 2010, and later Hunter who also ultimately obtained a license. Inlay was responsible for paying Sauce and Hunter the commissions for these policies from the checks he received from Agency One.

Around March 2011, Inlay and Sauce were involved in a physical altercation at the Sioux City office. Shortly thereafter, Sauce quit and Inlay stopped coming into the office on a regular basis. In May 2011, Inlay could no longer pay Hunter, who was essentially running the office, and Agency One began paying her salary. Siroky visited the Sioux City office a couple times between December 2010 and May 2011, but began visiting more often after May to train Hunter.

Inlay was officially terminated in August 2011. After his termination, Siroky learned that Inlay had continued to sell policies while his license was revoked or suspended.

*The Fall Out.* After Inlay was terminated, Siroky reviewed Inlay's files and learned that he had misrepresented information on several policies. One of the problem policies she did not discover was submitted by Inlay on or about December 7, 2010, on behalf of Patricia Potter and Sam Dedios. In that application, Inlay described the property to be insured as a one-story, 1500 square foot single family, residential dwelling built in 1958. This description was consistent with Met P&C's underwriting guidelines and Met P&C was bound to the policy. The policy was renewed on December 10, 2011, and Agency One did not review it for accuracy at that time.

A fire destroyed the Potter property on or about January 12, 2012, and Potter submitted a claim to Met P&C shortly thereafter. Only then did Met P&C learn that the property was not as Inlay had described, but instead was a two-story, 4320 square foot,

six-unit apartment building constructed in 1925. If the property had been accurately described, Met P&C would not have issued a policy because it does provide coverage for commercial risks. Nonetheless, Met P&C paid the claim.

On February 9, 2012, Inlay was charged with Commission of a Specified Unlawful Activity, Acting as an Insurance Producer Without a License, Fraudulent Submission to an Insurer and Forgery in Iowa District Court for Woodbury County. He plead guilty to one count of Acting as an Insurance Producer Without a License (a Class D felony) and one count of Commission of a Specified Unlawful Activity (a Class B felony). He was sentenced to five years in prison for the first count and twenty-five years for the second count. The twenty-five year sentence was suspended and he was placed on probation following a short period of incarceration.

## IV.   ANALYSIS

### A.   *Summary Judgment Standards*

Any party may move for summary judgment regarding all or any part of the claims asserted in a case. Fed. R. Civ. P. 56(a). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A material fact is one that "'might affect the outcome of the suit under the governing law.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, "the substantive law will identify which facts are material." *Id*. Facts that are "critical" under the substantive law are material, while facts that are "irrelevant or unnecessary" are not. *Id*.

An issue of material fact is genuine if it has a real basis in the record, *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v.*

*Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), or when "'a reasonable jury could return a verdict for the nonmoving party' on the question," *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (quoting *Anderson*, 477 U.S. at 248). Evidence that only provides "some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586, or evidence that is "merely colorable" or "not significantly probative," *Anderson*, 477 U.S. at 249-50, does not make an issue of material fact genuine.

As such, a genuine issue of material fact requires "sufficient evidence supporting the claimed factual dispute" so as to "require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 248-49. The party moving for entry of summary judgment bears "the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel*, 953 F.2d at 395 (citing *Celotex*, 477 U.S. at 323). Once the moving party has met this burden, the nonmoving party must go beyond the pleadings and by depositions, affidavits, or otherwise, designate specific facts showing that there is a genuine issue for trial. *Mosley v. City of Northwoods,* 415 F.3d 910 (8th Cir. 2005). The nonmovant must show an alleged issue of fact is genuine and material as it relates to the substantive law. If a party fails to make a sufficient showing of an essential element of a claim or defense with respect to which that party has the burden of proof, then the opposing party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 322.

In determining if a genuine issue of material fact is present, I must view the evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587-88. Further, I must give the nonmoving party the benefit of all reasonable inferences that can be drawn from the facts. *Id*. However, "because we view the facts in the light most favorable to the nonmoving party, we do not weigh the evidence or attempt to determine the credibility of the witnesses." *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 784 (8th Cir. 2004). Instead, "the court's function is to determine whether a dispute about a material fact is genuine." *Quick v. Donaldson Co., Inc.*, 90 F.3d 1372, 1376-77 (8th Cir. 1996).

*B.    Discussion*

Met P&C seeks entry of partial summary judgment on the issue of liability, against Agency One only, on each of its claims. In its resistance, Agency One argues that there are genuine issues of material fact – particularly with regard to the doctrine of respondeat superior – that preclude entry of summary judgment on any of Met P&C's claims. I will address those claims in the following order: (1) negligence, (2) negligent supervision[2] and (3) breach of fiduciary duty and breach of contract.

*1.    Negligence*

To recover on a claim of negligence, Met P&C must prove the existence of a duty of care, a breach of that duty, and that the breach was the cause of the injuries suffered. *Smith v. Koslow*, 757 N.W.2d 677, 680 (Iowa 2008). The existence of a legal duty is a question of law for the court. *Van Fossen v. MidAmerican Energy Co.*, 777 N.W.2d 689, 693 (Iowa 2009). However, under Iowa law "[i]t is well-settled that 'questions of negligence or proximate cause are ordinarily for the jury,' and 'only in exceptional cases should they be decided as a matter of law.'" *Thompson v. Kaczinski*, 774 N.W.2d 829, 832 (Iowa 2009) (quoting *Clinkscales v. Nelson Sec., Inc.*, 697 N.W.2d 836, 841 (Iowa 2005)).

In order to hold Agency One liable for Inlay's actions, Met P&C must show Inlay was acting in the scope of his employment. This is known as the doctrine of respondeat superior, which the Iowa Supreme Court has described as follows:

---

[2] Met P&C has raises two separate theories of negligence in its complaint under one Count II. It alleges defendants were negligent with respect to the investigation, application, binding and issuing of a Met P&C policy for the Potter property. Doc. No. 2 at ¶29. It also alleges defendants were negligent in their failure to adequately train, monitor and supervise their employees and producers in the investigation, application, binding and issuing of a Met P&C policy. *Id*. at ¶30. These theories will be discussed separately.

> The well established rule is that under the doctrine of *respondeat superior,* an employer is liable for the negligence of an employee committed while the employee is acting within the scope of his or her employment. Thus, a claim of vicarious liability under the doctrine of *respondeat superior* rests on two elements: proof of an employer/employee relationship, and proof that the injury occurred within the scope of that employment.
>
> We have said that for an act to be within the scope of employment the conduct complained of must be of the same general nature as that authorized or incidental to the conduct authorized. Thus, an act is deemed to be within the scope of one's employment where such act is necessary to accomplish the purpose of the employment and is intended for such purpose. The question, therefore, is whether the employee's conduct is so unlike that authorized that it is 'substantially different.' Said another way, a deviation from the employer's business or interest to pursue the employee's own business of interest must be *substantial in nature* to relieve the employer from liability.

*Godar v. Edwards*, 588 N.W.2d 701, 705-06 (Iowa 1999) (citations and internal quotation marks omitted) (emphasis in original). The question of whether an act is within the scope of employment is ordinarily a jury question, although, "depending on the surrounding facts and circumstances, the question as to whether the act which departs markedly from the employer's business is still within the scope of employment may well be for the court." *Weems v. Federated Mut. Ins. Co.*, 220 F. Supp. 2d 979, 992 (N.D. Iowa 2002) (quoting *Sandman v. Hagan*, 154 N.W.2d 113, 117 (Iowa 1967)).

Both parties reference the factors found in the Restatement (Second) of Agency for determining whether the conduct of an employee falls within the scope of employment. These factors are:

    (a)    whether or not the act is one commonly done by such servants;

    (b)    the time, place and purpose of the act;

9

(c) the previous relations between the master and the servant;

(d) the extent to which the business of the master is apportioned between different servants;

(e) whether or not the act is outside the enterprise of the master or, if within the enterprise, has not been entrusted to any servant;

(f) whether or not the master has reason to expect that such an act will be done;

(g) the similarity in quality of the act done to the act authorized;

(h) whether or not the instrumentality by which the harm is done has been furnished by the master to the servant;

(i) the extent of departure from the normal method of accomplishing an authorized result; and

(j) whether or not the act is seriously criminal.

Restatement (Second) of Agency § 229(2) (1957).

The parties agree that when the Potter policy was issued, Inlay was no longer an independent agent, but rather an employee of Agency One whose duties included, but were not limited to the following:

A. Coordinate and direct day-to-day administration and operations of AGENCY ONE agents and staff at the Agency Office.

B. Respond to inquiries, request and directives.

C. Administer the insurance application process.

D. Administer and coordinate agent contract and the agent contracting process with AGENCY ONE's insurance agents.

E. Supervise the administration and servicing of insurance contracts of AGENCY ONE.

F. Perform such other duties as assigned.

Defs. Appendix; Doc. No. 35-3 at 73. Agency One argues that Inlay's act of placing the misrepresented Potter policy was outside the scope of employment because he knew it was against the law and was prohibited by his employment contract with Agency One. Met P&C argues that Agency One essentially turned a blind eye to Inlay's conduct by continuing to allow Inlay to use the Met P&C access codes and failing to follow up on who was generating business in the Sioux City office. It argues the relationship between Agency One and Inlay effectively remained the same after Agency One learned Inlay's license had been revoked or suspended.

Viewing the facts in the light most favorable to Agency One as the nonmoving party, I find that a reasonable jury could conclude that Inlay was not acting within the scope of his employment when he placed the Potter policy. Inlay knew he was not allowed to place policies while his license was revoked or suspended and that doing so, while also misrepresenting those policies, was against the law. Because there is a genuine issue for trial as to whether Inlay was acting within the scope of employment when he placed the Potter policy, I will deny Met P&C's motion for summary judgment on this claim.

Moreover, Agency One contends that Met P&C cannot recover damages on a negligence theory when it has only suffered economic loss. *See Annett Holdings, Inc. v. Kum & Go, L.C.*, 801 N.W.2d 499, 503 (Iowa 2011) ("As a general proposition, the economic loss rule bars recovery in negligence when the plaintiff has suffered only economic loss."). In *Annett Holdings*, the Iowa Supreme Court explained that "[w]hen two parties have a contractual relationship, the economic loss rule prevents one party from bringing a negligence action against the other over the first party's defeated expectations—a subject matter the parties can be presumed to have allocated between themselves in their contract." *Id*.

While this argument may have merit, it is misplaced in the current procedural context. This is Met P&C's motion for summary judgment, not Agency One's. Indeed, neither defendant has filed a motion for summary judgment. Thus, while I have found

that Met P&C is not entitled to entry of summary judgment in its favor on its negligence claim, I will not address Agency One's argument that the claim is barred as a matter of law.

### *2.      Negligent Supervision*

Met P&C also seeks to hold Agency One liable based on its own actions. It argues Agency One failed to properly supervise Inlay to ensure he was not writing policies without a valid license and failed to follow up on evidence that Inlay had misrepresented several other policies with Met P&C.

To prevail on a claim of negligent supervision, the plaintiff must show:

> (1)   the employer knew, or in the exercise of ordinary care should have known, of its employee's unfitness at the time the employee engaged in wrongful or tortious conduct;
>
> (2)   through the negligent . . . supervision of the employee, the employee's incompetence, unfitness, or dangerous characteristics proximately caused injuries to the plaintiff; and
>
> (3)   there is some employment or agency relationship between the employee and the defendant employer.

*Estate of Harris v. Papa John's Pizza*, 679 N.W.2d 673, 680 (Iowa 2004) (citing *Stricker v. Cessford Constr. Co.*, 179 F. Supp. 2d 987, 1019 (N.D. Iowa 2001)). This claim is based on the Restatement (Second) of Agency § 213 which provides:

> A person conducting an activity through servants or other agents is subject to liability for harm resulting from his conduct if he is negligent or reckless:
>
> (a)   in giving improper or ambiguous orders of in failing to make proper regulations; or
>
> (b)   in the employment of improper persons or instrumentalities in work involving risk of harm to others:

12

>   (c) in the supervision of the activity; or
>
>   (d) in permitting, or failing to prevent, negligent or other tortious conduct by persons, whether or not his servants or agents, upon premises or with instrumentalities under his control.

Restatement (Second) of Agency § 213 (1957). The Iowa Supreme Court has explained the difference between a claim of negligent supervision and a claim based on an employee's negligence as follows:

> [Negligent supervision claims] are separate and distinct from those based on respondeat superior liability, which imposes strict liability on employers for the acts of their employees committed within the scope of their employment. A cause of action based on negligent hiring, supervision, or retention allows an injured party to recover where the employee's conduct is outside the scope of employment, because the employer's own wrongful conduct has facilitated in some manner the tortious acts or wrongful conduct of the employee.

*Kiesau v. Bantz*, 686 N.W.2d 164, 172 (Iowa 2004) (internal citations omitted).

Here, when viewing the facts in the light most favorable to Agency One, I cannot conclude as a matter of law that Agency One was negligent in supervising Inlay. A reasonable jury could find that Agency One did not know or have reason to know of Inlay's actions. Agency One points out there were two licensed agents in the Sioux City office while Inlay's license was suspended or revoked who could have been selling policies. Inlay also needed the Met P&C access codes to perform his authorized, appropriate duties as an employee. Whether Agency One knew or should have known of Inlay's actions at the time he placed the misrepresented policy, and whether Agency One's allegedly-negligent supervision was the proximate cause of Met P&C's harm, are appropriate questions for a jury. *See Thompson*, 774 N.W.2d at 832. For these reasons, I will deny Met P&C's motion for summary judgment on its claim of negligent supervision.

### 3. *Breach of Fiduciary Duty and Breach of Contract*

Finally, Met P&C argues Agency One breached its fiduciary duty to Met P&C by withholding information material to the issuance of the Potter policy. It alleges that Agency One continued to breach its fiduciary duty by failing to determine whether the Potter property was appropriately described when it renewed the policy in December 2011. Met P&C contends this breach of fiduciary duty also operates as a breach of contract between Agency One and Met P&C.

To prove breach of a fiduciary duty, Met P&C must show: (1) a fiduciary relationship existed between the plaintiff and the defendant, (2) the defendant breached that fiduciary duty and (3) the breach was a proximate cause of damage to the plaintiff. *Kurth v. Van Horn*, 380 N.W.2d 693, 698 (Iowa 1986). "[A]n insurance agent owes a duty to his principal to exercise reasonable skill, care and diligence in effecting the insurance coverage requested. Furthermore, the agent is liable to his principal for any loss or damage occasioned by his negligence." *Smith v. State Farm Mut. Auto. Ins. Co.*, 248 N.W.2d 903, 905 (Iowa 1976).

Agency One argues that Inlay breached his fiduciary duty to Agency One by submitting fraudulent applications and concealing his activities from Agency One, but his actions cannot be used to establish breach of the fiduciary relationship between Agency One and Met P&C unless respondeat superior applies. Alternatively, it argues a jury would have to find that Met P&C knew or should have known about Inlay's actions in order to find that Agency One breached its fiduciary duty and contract with Met P&C.

I agree with Agency One that my findings on Met P&C's claims of negligence and negligent supervision preclude summary judgment on the breach of fiduciary duty and breach of contract claims. Because I cannot find as a matter of law that Agency One is vicariously liable for Inlay's misconduct, or directly liable for negligently supervising Inlay, I cannot find as a matter of law that Agency One breached its contract with, or fiduciary duties to, Met P&C. Genuine issues of material fact remain for trial with regard

to those claims. As such, I will deny Met P&C's motion for summary judgment on its claims of breach of fiduciary duty and breach of contract.

## V. CONCLUSION

For the reasons set forth above, Met P&C's motion (Doc. No. 29) for partial summary judgment is **denied** in its entirety. This case will proceed to trial as scheduled on all issues beginning May 27, 2014.

**IT IS SO ORDERED.**

**DATED** this 25th day of March, 2014.

_____
LEONARD T. STRAND
UNITED STATES MAGISTRATE JUDGE